IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ROCHELLE LUCILLE CAREY,
     Plaintiff,

vs.                                   Case No.: 5:17cv100/EMT

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,
     Defendant.
_____/

## MEMORANDUM DECISION AND ORDER

This case has been referred to the undersigned magistrate judge for disposition pursuant to the authority of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, based on the parties' consent to magistrate judge jurisdiction (*see* ECF Nos. 11, 12). It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act"), for review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34 (for disabled widow's benefits), and for supplemental security income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.    PROCEDURAL HISTORY

Plaintiff filed her application for SSI on November 5, 2013, and she filed her application for DIB on January 28, 2014 (tr. 21).[1]  In each application she alleged disability beginning January 28, 2011 (*id.*).  Her applications were denied initially and on reconsideration, and thereafter she requested a hearing before an administrative law judge ("ALJ").  A hearing was held on February 23, 2016, and on March 30, 2016, the ALJ issued a decision in which he found Plaintiff "not disabled," as defined under the Act, at any time through the date of his decision (tr. 21–34).  The Appeals Council subsequently denied Plaintiff's request for review.  Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007).  This appeal followed.

---

[1] All references to "tr." refer to the transcript of Social Security Administration record filed on July 14, 2017 (ECF No. 14).  Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

Case No.: 5:17cv100/EMT

## II.    FINDINGS OF THE ALJ

In denying Plaintiff's claims, the ALJ made the following relevant findings (*see*

tr. 21–34):

(1)    Plaintiff is the unmarried widow of a deceased insured worker, who has attained the age of 50; her prescribed period began on January 24, 2008, the date the wage earner died, and it ended on January 31, 2015[2];

(2)    Plaintiff has not engaged in substantial gainful activity since January 28, 2011, the alleged onset date;

(3)    Plaintiff has the following severe impairments:  bulging cervical discs without cord impingement, left rotator cuff syndrome, fibromyalgia, hypertension, gastroesophageal reflux disease ("GERD"), and palpitations;

(4)    Plaintiff has no impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(5)    Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with frequent use of her hands for simple grasping and occasional use of her hands/upper extremities for pushing/pulling of arm controls; continuous use of her fingers for fine manipulation; occasional use of her feet for pushing/pulling of leg controls; frequent stooping; occasional crouching, kneeling, crawling; and no climbing ladders, ropes, or scaffolds. She can occasionally climb ramps, stairs, and balance; occasionally reach overhead with the left arm; frequently reach overhead with the right arm; perform occasional work around unprotected heights and moving machinery; and can have limited exposure to temperature extremes, as well as drive automotive equipment that requires the use of a clutch.  She experiences pain, which will occasionally interfere with her

---

[2]To qualify for widow's disability benefits, a claimant must be unmarried, at least fifty years old, the widow of a wage earner who dies fully insured, and must have become disabled within seven years of the wage earner's death, *see* 20 C.F.R. § 404.335(c)(1), or in this case on or before January 31, 2015 (i.e., the end of the "prescribed [seven-year] period").

concentration, persistence, and pace but will not require abandonment of her work or workstation. This is not a continuous concept and occurs up to 20% of the time;

(6)     Plaintiff can return to her past relevant work as a bookkeeper (DOT No. 210.382-014) (sedentary/skilled);

(7)     Because Plaintiff can return to her past work, she was not disabled, as defined in the Act, between January 28, 2011 (alleged onset), and March 30, 2016 (date of the ALJ's decision).[3]

## III.     STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd.,

---

[3] The time frame relevant to Plaintiff's claim for SSI is November 5, 2013 (the date she applied for benefits), through March 30, 2016 (the date the ALJ issued his decision). *See* Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (indicating that SSI claimant becomes eligible to receive benefits in the first month in which he is both disabled and has an SSI application on file).

921 F.2d 1210, 1214 (11th Cir. 1991).  As long as proper legal standards were applied,

the Commissioner's decision will not be disturbed if in light of the record as a whole

the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g);

Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998); Lewis, 125 F.3d at 1439; Foote

v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a

scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person

would accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S.

389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison

Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125

F.3d at 1439.  The court may not decide the facts anew, reweigh the evidence, or

substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d

1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates

against the Commissioner's decision, the decision must be affirmed if supported by

substantial evidence.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

    The Act defines a disability as an "inability to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To qualify

as a disability the physical or mental impairment must be so severe that the claimant

is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A). Pursuant to 20 C.F.R. § 404.1520(a)–(g),[4] the Commissioner analyzes a disability claim in five steps:

1.　　If the claimant is performing substantial gainful activity, she is not disabled.

2.　　If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.　　If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.　　If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

---

[4] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416). Therefore, citations in this Order should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

5.      Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.     RELEVANT BACKGROUND INFORMATION

A.      Plaintiff's Personal History

Plaintiff appeared by video for a hearing before an ALJ on February 23, 2016.  She was represented by counsel (*see, e.g.*, tr. 42).  At the outset of the hearing her counsel advised the ALJ that he had reviewed the exhibits in Plaintiff's case and had no objection to them (tr. 47).  He also advised the ALJ that Plaintiff's "biggest problem," in terms of being disabled, was her "chronic fatigue, fibromyalgia, and just chronic pain" (tr. 47).

Plaintiff then testified, first advising the ALJ that she was fifty-five years of age, having been born in 1960, and that she had a high school equivalent education and "some college" (tr. 48–50).  She noted she had been married to Daniel Carey, who died in January 2008, and that she had not remarried (tr. 48–49).  She stated she had previously worked as a bookkeeper and in other similar, sedentary jobs (*see* tr. 50–53, 65).  When asked if she had worked since her alleged onset date of January 28, 2011, Plaintiff responded, "I think I worked at [a] liquor store" (tr. 54).[5]

Plaintiff testified that she was disabled primarily due to "bulging discs" and fibromyalgia, which resulted in pain, fatigue, and low energy (tr. 54).  She equated the pain to a sensation of feeling bruised all over, even in her eyeballs, and testified that when the pain was at its worse—which occurred about twice a week and lasted about four hours—it was "unbearable" (tr. 55).  Plaintiff is right-handed and reported no problems using her right hand for handling or manipulating large and small objects, or for feeling things, though she noted she would sometimes drop objects (*see* tr. 55–57).  She estimated she could lift and occasionally carry fifteen pounds, stand twenty minutes at time and a total of two hours in an eight-hour workday, sit three hours at a time and a total of six hours in a workday ("if [she] could move around and

---

[5] Earnings records from 2011 show income from Amazon Liquor Inc., albeit in a minimal amount (*see* tr. 225–26), so it appears that Plaintiff did work at least for a short period of time after her alleged onset, as she testified.

Case No.: 5:17cv100/EMT

lay down in between"), and walk for only about three minutes at a time and a total of fifteen minutes in a workday (tr. 57–59).

Plaintiff claimed that on an average day she was up and out of bed from only approximately 11:00 a.m. until 8:00 p.m. and that she did essentially nothing all day other than watch television and eat a late lunch and early dinner (*see* tr. 59).  She claimed to perform no household chores other than laundry, stated that her meal preparation consisted only of cooking food in a microwave, and that she shopped twice a month (tr. 60).  Similarly, she reported no social activities whatsoever, other than going to church "maybe once a month" (tr. 60–61).

B.     Plaintiff's Medical History[6]

Records from the Tift Regional Medical Center dated February 23, 2010, show that Plaintiff underwent magnetic resonance imaging ("MRI") of the brain after complaining of numbness, headache, and neck pain.  The MRI revealed no intraaxial or extraaxial masses or abnormal fluid collection.  An MRI of the cervical spine was also obtained.  It revealed no enhancing cord lesions or diffuse bulging of the posterior disc margin at C5-C6 and C6-C7, and no cord impingement.  On May 22, 2010, Plaintiff complained of shortness of breath and was diagnosed with a

---

[6] The information in this section is derived from the ALJ's opinion and includes the ALJ's references to the exhibits of record (*see* tr. 27–29).

Case No.: 5:17cv100/EMT

bronchospasm, and on August 9, 2010, she complained of rectal bleeding and abdominal pain, but was diagnosed only with constipation (Exhibit B3F).

Records from Baker Family Medicine dated January 12, 2010, reflect that Plaintiff presented for medication refills. She complained of generalized pain and discomfort throughout her joints, as well as mood swings and memory loss. Physical examination was essentially normal. She was diagnosed with hypothyroidism, unspecified sleep disturbance, pain in her joints, lumbar neuritis/radiculitus, and myalgia/myositis. On July 15, 2010, she presented for a physical examination and refill of her medications. She reported doing very well and denied any other complaints. Physical examination was again essentially normal. She was diagnosed with hypothyroidism, a cough, acute bronchitis, asthma, joint pain, myalgia/myositis, arthropathy, and anxiety (Exhibit B4F).

Records from the Avicenna Clinic dated August 1, 2013, reflect Plaintiff's complaints of fibromyalgia and a left rotator cuff injury, as well as memory loss. Neurological examination revealed neuropathy of her feet that went up her legs, and examination of her left shoulder revealed decreased range of motion with abduction. Plaintiff was diagnosed with hypothyroidism, hyperlipidemia, and fibromyalgia. Her medications were adjusted, and she was referred to vocational rehabilitation and an orthopedist to check her left rotator cuff to determine whether she had a frozen

shoulder or a tear. On October 1, 2013, Plaintiff followed up for her laboratory results and was diagnosed with epigastric pain and hyperlipidemia. On November 6, 2013, Plaintiff complained of memory problems and syncopal episodes. She was diagnosed with near syncopal episodes with no loss of consciousness, as well as memory impairment, fatigue, and generalized pain. Her laboratory results were all within normal limits. She was referred to neurology due to her near fainting spells and memory loss.

On December 4, 2013, Plaintiff presented for follow up on her blood work and a brain MRI. She complained of pain and tenderness in her left hip and left shoulder. She was diagnosed with parasites in her nose and stool. The MRI of her brain was normal, and her carotid ultrasound was normal. She had a positive antinuclear antibody ("ANA") test, but her rheumatoid factor was normal.

On January 6, 2014, Plaintiff was noted have rotator cuff syndrome; she also was referred to rheumatology. Approximately one month later, on February 12, 2014, Plaintiff presented for medication refill and was complaining of constant pain and being overly tired. On April 24, 2014, she complained of on-and-off shaking and stated she felt very weak. She complained of pain all over her muscles. She was diagnosed with generalized pain, generalized weakness, and generalized fatigue (Exhibit B5F).

Records from the Avicenna Clinic dated June 2, 2014, reflect Plaintiff's report that she was in constant pain and was very fatigued. On August 4, 2014, she followed up for her blood work. She also complained of a fluttering in her chest. She was diagnosed with palpitations, hypothyroidism, GERD, and gastritis. On April 6, 2015, she presented for laboratory results. She was feeling well, and a physical examination was essentially normal. Her blood pressure was 135/90. On June 8, 2015, Plaintiff's physical examination was again essentially normal (Exhibit B6F).

Records from Bay Medical Center dated August 26, 2015, show that Plaintiff presented with a "right-ear bleed" and right-sided facial pain. She was treated for an earache. An MRI of the brain showed no acute abnormalities (Exhibit B7F).

C.      Other Information Within Plaintiff's Claim File

A vocational expert ("VE") testified at Plaintiff's hearing. In summary, the VE testified that a hypothetical person of Plaintiff's age, with Plaintiff's education, work history, and RFC, could return to Plaintiff's past relevant work as a bookkeeper (tr. 66–68). He characterized that past work as sedentary and skilled (tr. 65). The VE testified that Plaintiff had acquired transferable job skills, including bookkeeping skills, computer operation skills, and vocational software skills (tr. 66). He then opined that the same hypothetical person could perform other work available in the economy, including general clerk and hotel clerk, both of which are performed at the

light level of exertion (tr. 68–69). Finally, the VE opined that if the hypothetical individual experienced severe pain that lasted for four hours and occurred twice a week, the individual would be precluded from all work (tr. 69).

## V.    DISCUSSION

Plaintiff is proceeding pro se in this appeal. As such, the court has liberally construed her claims. *See, e.g.*, <u>Haines v. Kerner</u>, 404 U.S. 519 (1972) (a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers"). In addition to generally claiming that she is disabled and that the ALJ erred in concluding otherwise, Plaintiff appears to assert the following more-specific grounds for relief, some of which the court will discuss together: (1) the ALJ erred in failing to fully develop the record, including by failing to obtain all of Plaintiff's medical records and by failing to refer Plaintiff for one or more consultative examinations; (2) the ALJ erred in failing to consider the entire record; (3) the Commissioner erred in failing to reopen an earlier claim for disability benefits made by Plaintiff; and (4) the Appeals Council erred in denying review (*see* ECF No. 16).

### A.    Development of the Record, Consideration of the Record, Reopening Plaintiff's Prior Claim

The ALJ has a duty to fully and fairly develop the record. <u>Ellison v. Barnhart</u>, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam). If a claimant is not represented, the ALJ has a special duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." <u>Brown v. Shalala</u>, 44 F.3d 931, 934–35 (11th Cir. 1995) (per curiam) (quotation omitted). Nevertheless, the claimant bears the burden of proving her disability, so she is responsible for producing evidence to support her claim. <u>Ellison</u>, 355 F.3d at 1276. In determining whether to remand a case for further development of the record, this court should consider "whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." <u>Brown</u>, 44 F.3d at 935 (quotations omitted). Thus, a claimant must show prejudice before the court will find that her right to due process has been violated and therefore remand her case for further development of the record. *Id.*

Here, the ALJ had no heightened duty to develop the record because Plaintiff was represented by counsel during the relevant administrative phases of this case, including during her hearing before the ALJ. Moreover, at the hearing the ALJ asked Plaintiff's counsel if he had any objections to the exhibits, and counsel stated that he had none. Counsel did not assert that the record was missing any medical evidence or that it was otherwise incomplete; nor did counsel request that Plaintiff be referred for a consultative examination. Similarly, at the end of Plaintiff's hearing, the ALJ

asked Plaintiff's counsel if there was any other evidence to be released to the Commissioner[7] or whether there was any other matter "for the record," to which counsel responded in the negative (*see* tr. 70–71).  Thus, the ALJ was not alerted to any purported gaps in the record by Plaintiff or her counsel, even after he specifically asked about the exhibits, evidence, and matters of record.  *See* <u>Larry v. Comm'r of Soc. Sec.</u>, 506 F. App'x 967, 969 & 969 n.3 (11th Cir. 2013) (where ALJ specifically asked claimant if he had any additional exhibits, and claimant's counsel responded that the record was complete, "any alleged error the ALJ may have made in not obtaining more recent medical records was invited") (citing <u>Ford ex. rel. Estate of Ford v. Garcia</u>, 289 F.3d 1283, 1293–94 (11th Cir. 2002)).[8]  Accordingly, the ALJ did not err in failing to sufficiently develop the record.

---

[7] The transcript contains scrivener's errors at this part of the ALJ's questioning (*see* tr. 70), but the undersigned's characterization captures the gist of the ALJ's question, if not the exact meaning.

[8] It should be noted that on August 21, 2015, well prior to Plaintiff's hearing before the ALJ, the Hearing Office sent Plaintiff a letter with a CD that contained all the evidence in her electronic folder to date (tr. 295).  The letter specifically informed Plaintiff that it was her responsibility to provide medical evidence showing that she had impairments and how severe they were during the time she alleged disability (*id.*).  Therefore, Plaintiff was on advance notice both of any absence of any medical records, and of her obligation to provide medical evidence to the Commissioner.  The letter also indicated that Plaintiff should submit all medical records from one year prior to the alleged onset date to the present, as well as any other relevant medical, school, or other records not already in the file (*id.*).  Thus, if Plaintiff wished to submit additional medical or other records she clearly had the opportunity to do so and, importantly, was aware of her ability and obligation to do so.

Even if the ALJ did err with respect to development of the record, however, there is no need to remand this case for further factual development because Plaintiff has not shown unfairness or clear prejudice.  <u>Brown</u>, 44 F.3d at 935.  Although Plaintiff contends the file is missing medical records, she notes that these same records were missing in her "2013 case . . . because Avicenna Clinic didn't send [the Commissioner] all of [her] medical records" when the Commissioner initially requested them (ECF No. 16 at 1).  Plaintiff explains that when she "first moved to Panama City, FL, from Texas" and began receiving treatment at Avicenna, her former Texas physician(s) provided her medical records to Avicenna, but when the Commissioner obtained Avicenna's records (evidently in connection with a prior claim for benefits made by Plaintiff) the Avicenna records included no records from Texas (*id.*).  Plaintiff generally asserts that "[t]hey need to get all of my records in order to make an informed decision" (*id.*).

Plaintiff does not describe the dates or content of the earlier Texas records, explain how or why they would have caused the ALJ to reach a different decision in connection with her instant (or prior) claims for benefits, or even assert that the Texas records are substantially different from the Avicenna (or any other) records that are part of the file and were considered by the Commissioner in denying her claims. Plaintiff seems to be of the impression that the simple fact that earlier records are

missing requires a remand in order for the Commissioner to obtain them.  But this is not the standard.  The omitted medical records must be relevant to Plaintiff's claim of disability, such that they might sustain the contention of an inability to work.  <u>Brown</u>, 44 F.3d at 935–36.  Here, there simply is no basis on which to conclude that Plaintiff's earlier treatment records from Texas—of which her more recent treating providers at Avicenna were aware—might establish that Plaintiff was unable to work during the time period(s) relevant to her claims.

Plaintiff also generally contends the ALJ should have referred her for a consultative examination at the Commissioner's expense (ECF No. 16 at 3).  Plaintiff states that had the Commissioner arranged for "more testing . . . they would have had sufficient medical evidence about my impairment to determine whether I am disabled" (*id*.).  Plaintiff's claim is equivocal.  To the extent she claims that testing at the Commissioner's expense was necessary to support the ALJ's finding that any of her impairments <u>does not</u> meet or equal the criteria of a listed impairment, she is mistaken.  No such testing is required to rule out a listing.  To the extent she contends that testing would have shown that any of her impairments <u>does meet</u> the criteria of a listing, her claim is wholly speculative, but in any event it is not the Commissioner's obligation to "build a case" for Plaintiff.  She must prove she is disabled.  *See* <u>Ellison</u>, 355 F.3d at 1276 ("the claimant bears the burden of proving he is disabled, and, consequently,

he is responsible for producing evidence to support his claim"); <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so."); *see also, e.g.*, <u>Rothfeldt v. Acting Comm'r of the Soc. Sec. Admin.</u>, 669 F. App'x 964, 967 (11th Cir. 2016) ("In the third step of the sequential evaluation process, <u>the claimant must provide specific evidence that his impairment meets or medically equals a listed impairment</u>.") (citing <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (emphasis added)); <u>McCloud v. Barnhart</u>, 166 F. App'x 410, 418 (11th Cir. 2006) ("[t]o the extent [the claimant] contends that the ALJ should have obtained records for treatment of which there is no evidence in the record, [claimant] was in the best position to inform the ALJ as to her treatment history, and by failing to do so, she failed to meet her burden").

As her final sub-claim with respect to development of the record, Plaintiff appears to specifically contend that she should have been referred for a consultative examination in connection with her "MDI [medically determinable impairment] eg. emphysema, as x-ray showed on p. 361" (*see* ECF No. 16 at 3).

As noted *supra*, at Plaintiff's hearing both she and her counsel advised the ALJ that her "biggest problems" related to her fibromyalgia (and related symptoms), as well as her bulging discs. As before, these statements failed to alert the ALJ of any

need to refer Plaintiff for lung-related testing or evaluation, or of Plaintiff's apparent contention that she is disabled on the basis of emphysema. Moreover, the transcript page to which Plaintiff refers is an emergency room ("ER") chart dated May 22, 2010, which summarizes chest x-ray findings as follows: "air trapping consistent with emphysematous changes" (tr. 361). This is not the same as a diagnosis of emphysema. Additionally, a more-detailed report of the x-ray shows that it revealed no focal consolidation, no pleural effusion, no pneumothorax, and no acute osseous abnormality; it also showed well-inflated lungs and a cardiac silhouette within normal limits (tr. 367). Furthermore, the ER chart of May 22 shows that a follow-up appointment was arranged and/or recommended for Plaintiff with a "Richard Baker," evidently of Baker Family Medicine in Omega, Georgia, within three to five days, but Plaintiff did not see Dr. Baker until July 15, 2010, at which time she advised that she was "doing over all well" (tr. 372). Plaintiff's medications were refilled, and she advised Dr. Baker that she had no other complaints, including no shortness of breath, no chest pain, and no dizziness (*id.*).[9] For all of the foregoing reasons, the undersigned concludes that the record was fully developed, and the ALJ committed no error in failing to further develop the record.

---

[9] Plaintiff presented to the ER on May 22, 2010, with complaints of shortness of breath and lightheadedness (*see* tr. 357).

Continuing, Plaintiff argues that the ALJ failed to consider all of the evidence of record. In support, she makes the following arguments (*see* ECF No. 16 at 1–2):

(1)    the ALJ acknowledged Plaintiff's diagnoses of acute bronchitis and asthma, but he failed to reference page 361 of the transcript which states that she has "non-specific pulmonary scaring [sic] and fibrosis noted on x-ray" taken May 22, 2010;

(2)    the ALJ mentioned her "bronchospasm" but "failed to mention that on p. 361 [her] Xray shows air trapping consistent with emphysematous changes";

(3)    the ALJ noted her "chest fluttering and palpitations" but did not note her abnormal Troponin test of May 22, 2010, as reflected on page 346 of the transcript;

(4)    the ALJ acknowledged the neuropathy in her feet that "goes up [her] legs" but failed to mention the abnormal D-Dimer test of May 22, 2010, as shown on transcript page 350;

(5)    the ALJ referenced Plaintiff's complaint of rectal bleeding but did not note her abnormal partial thromboplastin time test, or "PTT," of May 22, 2010, as reflected on page 351 of the transcript;

(6)    the ALJ mentioned her positive ANA test of November 19, 2013, but did not:

(a)     mention that the positive test "could" constitute a lupus clue and as such is a strong indicator for doctors to consider in diagnosing lupus, or

(b)     note the abnormal ANA titer test of November 19, 2013, lymphocyte test of August 9, 2010, and hematrocrit test of May 28, 2014 (citing tr. 391, 336, 406, respectively); and

(7)     the ALJ noted her "lumbar neuritis" but did not note her abnormal alkaline phosphtase test of December 12, 2013, as reflected on page 387 of the transcript.

Plaintiff then summarizes the foregoing arguments as follows:

> [The ALJ] mentioned that I had an ANA test, this was not a diagnosis, just a test.  But since that test was taken into consideration it set a precedent, therefore all of the above mentioned tests should also be taken into consideration.  Because they did not take the other tests into consideration there appears to be an abuse of their discretion, and the decision is not supported by substantial evidence.  Most of the tests mentioned above were taken in 2010 so my 2009 claim should be reopened and investigated. . . .  The ALJ either overlooked or ignored all these [] tests.

(ECF No. 16 at 2, 3).

Plaintiff's argument is unclear, but she seems to fault the ALJ for failing to recite each and every bit of evidence demonstrating any medical abnormality in her medical history whatsoever, primarily focusing on the abnormalities shown after routine blood screening.  But, "there is no rigid requirement that the ALJ specifically

refer to every piece of evidence in his decision," as long as the ALJ's decision "is not a broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.'" Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting Foote, 67 F.3d at 1561).

Routine blood screening such as that undergone by Plaintiff allows physicians to recommend dietary changes, medication management, exercise(s), additional testing, monitoring over time, or it can otherwise shape the course of future treatment. If, on the other hand, the screening indicates something more serious and the need for a more serious response, such is for a physician to determine, not Plaintiff, and such would be reflected in Plaintiff's follow-up treatment notes. There is, however, no such indication in the record here. Thus, the ALJ did not err in failing to recount any and all abnormalities in Plaintiff's medical history in his decision, including the results of each and every current and remote blood test or other detailed portions of the record identified by Plaintiff. The question is whether the ALJ considered the entire medical record as a whole; his decision reflects that he did (*see* tr. 21–34).

B.      Appeals Council Erred in Denying Review

As previously noted, Plaintiff submitted evidence to the Appeals Council ("AC") with her request for review of the ALJ's decision (*see* tr. 2, 4, 5, 421–25). The

AC considered the additional evidence but "found that this information does not provide a basis for changing the [ALJ's] decision" (tr. 1–5).

A court generally considers evidence submitted to the AC with the record as a whole to determine whether substantial evidence supports the ALJ's decision. *See* Ingram, 496 F.3d at 1266. When a claimant submits new and material evidence, the AC evaluates the entire record including any new and material evidence submitted if it is chronologically relevant, that is, if it relates to the period considered by the ALJ, to determine if the ALJ's action, findings, or conclusions are contrary to the weight of the evidence currently of record. *See* 20 C.F.R. § 404.970(b); Ingram, 496 F.3d at 1261.

Here, remand was not warranted. Plaintiff submitted a total of five pages of medical records to the AC (*see* tr. 421–25). Four pages are treatment notes (three from Avicenna and one from Brain and Spine, LLC); the fifth page merely reflects lab results (evidently blood work). The undersigned discerns nothing from these records that would provide a basis to change the ALJ's decision. Stated differently, consideration of the new records—which document Plaintiff's complaints of some pain and blood in her ears, a migraine, referrals for an MRI and for labwork, and largely unremarkable findings on physical examination (*see* tr. 421–23)—does not

alter the conclusion that the final decision of the Commissioner is supported by substantial evidence on the record as a whole.

C.      Failure to Reopen

Plaintiff contends the ALJ erred in failing to reopen her prior application for DIB, but the undersigned finds no error.

As a general matter, district courts do not have jurisdiction over the Commissioner's refusal to reopen a claim, since such a refusal is not a "final decision" within the meaning of § 405(g). Califano v. Sanders, 430 U.S. 99, 107–09, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977). Instead, a decision refusing to reopen an earlier application ordinarily is considered an interim decision not reviewable under § 405(g). *See, e.g.*, Loudermilk v. Barnhart, 290 F.3d 1265, 1268 (11th Cir. 2002); Sherrod v. Chater, 74 F.3d 243, 245 (11th Cir. 1996).[10]

There is, however, an exception to this rule. Subject matter jurisdiction exists in those cases where a final decision on a prior "social security claim is in fact reopened and reconsidered on the merits to any extent on the administrative level." Sherrod, 74 F.3d at 245. Here, the undersigned has found no indication in the record:

---

[10] *See also* 20 C.F.R. § 404.900(a)(5) (defining a final decision for purposes of judicial review as an initial determination that has been pursued through all four steps in the administrative review process); 20 C.F.R. § 404.903(l) (listing "denial of a request to reopen a determination or decision" as an administrative action that is not subject to judicial review).

(1) that Plaintiff asked the Commissioner to reopen her prior application at any time before mentioning the issue in her brief before this court, or (2) that the ALJ in any way considered the merits of Plaintiff's earlier application at any time, directly, implicitly, or in a *de facto* manner. *See, e.g.*, Cash v. Barnhart, 327 F.3d 1252, 1256 (11th Cir. 2003) ("Although the ALJ denied her implicit request to reopen, Cash argues that a *de facto* reopening of her first claim occurred. Thus, our task is to determine whether there was a *de facto* reopening of Cash's first application resulting in a new final decision to support jurisdiction under § 405(g)."). Put simply, the ALJ found that Plaintiff was not disabled based only on the evidence of record, without in any way revisiting the merits of the prior final determination. Thus, this court has no jurisdiction to consider Plaintiff's claim that the Commissioner erred in declining to reopen her prior application.

VI.   CONCLUSION

For all of the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed. 42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is hereby **ORDERED**:

1.      That the decision of the Commissioner is **AFFIRMED**, and this action

is **DISMISSED**.

2.      That **JUDGMENT** is entered, pursuant to sentence four of 42 U.S.C.

§ 405(g), **AFFIRMING** the decision of the Commissioner.

3.      That the Clerk is directed to close the file.

At Pensacola, Florida this 13th day of June 2018.


                              /s/ *Elizabeth M. Timothy*
                              **ELIZABETH M. TIMOTHY**
                              **CHIEF UNITED STATES MAGISTRATE JUDGE**